**CHRISTENSEN JAMES & MARTIN, CHTD.**
Kevin B. Christensen, Esq. (175)
Wesley J. Smith, Esq. (11871)
Kevin B. Archibald, Esq. (13817)
7440 W. Sahara Avenue
Las Vegas, Nevada 89117
Telephone: (702) 255-1718
Facsimile: (702) 255-0871
kbc@cjmlv.com, wes@cjmlv.com, kba@cjmlv.com,
*Attorneys for Board of Trustees of UNITE HERE Health, et al.*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

* * * * *

| | |
|---|---|
| BOARD OF TRUSTEES OF UNITE HERE HEALTH; BOARD OF TRUSTEES OF SOUTHERN NEVADA CULINARY AND BARTENDERS PENSION TRUST; BOARD OF TRUSTEES OF SOUTHERN NEVADA JOINT MANAGEMENT AND CULINARY AND BARTENDERS TRAINING FUND; BOARD OF TRUSTEES OF CULINARY AND BARTENDERS HOUSING PARTNERSHIP FUND; and BOARD OF TRUSTEES OF CULINARY AND BARTENDERS TIP EARNERS LEGAL ASSISTANCE FUND,<br><br>Plaintiffs,<br><br>vs.<br><br>CIRCUS CIRCUS CASINOS, INC., a Nevada corporation; MGM RESORTS INTERNATIONAL, a Delaware corporation; JOHN DOES I-XX, inclusive; and ROE ENTITIES I-XX, inclusive,<br><br>Defendants. | CASE NO.:<br><br>**COMPLAINT**<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Date: N/A<br>Time: N/A |

The Plaintiffs, the Board of Trustees of UNITE HERE HEALTH, Board of Trustees of SOUTHERN NEVADA CULINARY AND BARTENDERS PENSION TRUST, Board of Trustees of SOUTHERN NEVADA JOINT MANAGEMENT AND CULINARY AND BARTENDERS TRAINING FUND, Board of Trustees of CULINARY AND BARTENDERS

HOUSING PARTNERSHIP FUND, and Board of Trustees of CULINARY AND BARTENDERS TIP EARNERS LEGAL ASSISTANCE FUND (collectively referred to herein as the "Plaintiffs"), acting by and through their attorneys, Christensen James & Martin, Chtd., hereby complain, assert and allege as follows:

## JURISDICTION & VENUE

1. This Court has jurisdiction of this case pursuant to Section 502(e)(1) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1132(e)(1), which grants the United States District Courts exclusive jurisdiction over civil actions brought by a fiduciary pursuant to Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), to redress violations or enforce the terms of ERISA or an employee benefit plan governed by ERISA. Such jurisdiction exists without respect to the amount in controversy or the citizenship of the parties, as provided in Section 502(f) of ERISA, 29 U.S.C. § 1132(f).

2. This Court has jurisdiction of this case pursuant to Section 301(a) of the Labor Management Relations Act of 1947, as amended ("LMRA"), 29 U.S.C. § 185(a), which grants the United States District Courts original jurisdiction over suits for violation of contracts between an employer and labor organization in an industry affecting commerce, without respect to the amount in controversy or the citizenship of the parties.

3. To the extent this Complaint sets forth any state law claims, this Court has supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367(a).

4. Venue is proper in this Court pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), and Section 301(a) of the LMRA, 29 U.S.C. § 185(a), in that this is the Judicial District in which the Plaintiff Trusts are administered, the signatory labor organization maintains its office, where the relevant acts took place, and where the contractual obligation is to be paid.

## PARTIES

5. The Plaintiffs are each express trusts created pursuant to written declarations of trust ("Trust Agreements") between various unions and various employers or employer

CHRISTENSEN JAMES & MARTIN, CHTD.
7440 WEST SAHARA AVE., LAS VEGAS, NEVADA 89117
PH: (702) 255-1718 § FAX: (702) 255-0871

associations.

6. The Plaintiffs exist to provide employee benefits to participants under a "multiemployer plan," "employee benefit plan," "employee benefit pension plan," and/or "employee welfare benefit plan," as the case may be, within the meaning of ERISA, 29 U.S.C. § 1002.

7. The Board of Trustees and the individual Trustees of each of the Plaintiffs is a "named fiduciary," "plan administrator" and "plan sponsor" and each is an individual "fiduciary," within the meaning of 29 U.S.C. §§ 1102(a), 1002(16) and (21), with respect to collection of fringe benefit contributions, dues, and withholdings due to the Plaintiffs and related matters.

8. The Plaintiffs were created and now exist pursuant to Section 302(c) of the LMRA, 29 U.S.C. § 186(c), and are administered in Las Vegas, Nevada.

9. The Plaintiffs are each an association or fund to which the Defendants named herein are required to pay fringe benefit contributions, dues, and withholdings pursuant to the terms of the CBA, as described below.

10. At all times material herein, the Culinary Workers Union, Local 226, and/or Bartenders Union, Local 165 (collectively referred to herein as the "Union") have been labor organizations representing employees in the hotel/casino and hospitality industries in southern Nevada. The Union represents employees in an industry affecting commerce within the meaning of 29 U.S.C. §§ 152(2), (6) and (7), 1002(5), (11) and (12). At all times material herein, the Local Joint Executive Bard of Las Vegas ("Joint Executive Board") has been a contracting agent for the Union.

11. Defendant CIRCUS CIRCUS CASINOS, INC. ("Circus") was and/or is a Nevada corporation and at all times material herein is and/or was doing business as the Circus Circus Hotel and Casino ("Hotel") located at 2880 Las Vegas Boulevard South, Las Vegas, Nevada 89109.

12. Defendant MGM RESORTS INTERNATIONAL ("MGM") was and/or is a

-3-

Delaware corporation and at all times material herein is and/or was the corporate parent, owner, manager, member, director and/or shareholder of Defendant Circus and maintained control over the operations of Circus and/or the Hotel.

13. Defendants Circus and MGM (collectively referred to herein as the "MGM Defendants"), individually and jointly, are employers in an industry affecting commerce within the meaning of 29 U.S.C. §§ 152(2), (6) and (7), 1002(5), (11) and (12).

14. The MGM Defendants have been operated as a single enterprise, with common ownership, common management, interrelationship of operations, and centralized control of labor, and are working as a single entity, enterprise, employer and business in fact.

15. The MGM Defendants, individually and jointly, are the owner, co-owner, agent, partner, representative, employee and/or alter-ego of each other, or otherwise acting on behalf of each other, and in doing the things herein alleged, were acting within the course and scope of said ownership, agency, partnership or relation, with the permission and consent of each of them, and that each was working as a single entity, employer and business in fact.

16. The true names and capacities, whether partnership, individual, corporate, company, associate or otherwise of John Does I-XX, inclusive, and Roe Corporations I-XX, inclusive, are unknown to the Plaintiffs at this time and said Defendants are therefore sued by fictitious names. The Plaintiffs reserve the right to amend the Complaint to insert additional charging allegations against Does and Roes, together with the true identities and capacities of Does and Roes, when the same have been ascertained.

**GENERAL ALLEGATIONS**

17. Circus executed one or more Collective Bargaining Agreements (collectively referred to herein as the "CBA") with the Joint Executive Board, whereby Circus became subject to and bound by the terms and conditions of the CBA, and by the terms and conditions of the Trust Agreements pertaining to the operation and labor relations at the Hotel.

18. The Plaintiffs are intended beneficiaries of the CBA, which requires the remittance of employee fringe benefit contributions at specified rates for each hour of covered

-4-

labor performed by employees at the Hotel.

19. At all times material herein, one or more of the MGM Defendants have operated the Hotel and have accepted the terms and conditions of the CBA and Trust Agreements.

20. The Introduction to the CBA, located on Page 1, defines Circus and its successors and assigns as the "Employer."

21. Article 1 of the CBA, titled "Recognition and Contract Coverages," sets forth the coverage of the CBA, including covered employees and work classifications:

> Subsection 1.01(a)   The Employer recognizes the Union as the exclusive collective bargaining representative for the Employer's employees **employed at its facility** as indicated in the first paragraph of this agreement, . . . working under the Union's jurisdiction and working in those job classifications listed in Exhibit 1, attached to and made a part of this Agreement. The Employer and the Union agree that **all employees working in classifications listed in Exhibit 1 are properly within the bargaining unit**. . . .
>
> Subsection 1.01(b)   For clarification, "all employees" as used in subsection 1.01(a) includes workers the Employer may obtain from a temporary labor source, employment agency or other source besides the Employer's own hiring process **regardless whether the workers are on the Employer's payroll or that of another entity** and regardless of the job classifications or titles assigned to them by another entity, **as long as they are performing bargaining unit work at the Employer's facility**.

(emphasis added).

22. Section 1.01 of the CBA defines the coverage of the CBA to all employees working at the Hotel facilities performing work in the classifications listed therein, including employees who may be on the payroll of another entity. In summary, the Defendants agreed that all workers on the Hotel premises working in specified positions would be covered by the CBA.

23. Article 29 of the CBA, titled "Subcontracting and Subleasing," establishes that even if the Employer subcontracts with or subleases to a third-party to operate within the Hotel, the terms of the CBA will still apply, and the Employer will exercise full control over the employment of the employees:

> It is recognized that the Employer and the Union have a common interest in protecting work opportunities for all employees covered by this Agreement and employed on a regular basis. Therefore, no work customarily performed by employees covered by this

Agreement shall be performed under any sublease, subcontract, or other agreement unless the terms of any lease, contract or other agreement specifically state that (a) all such work shall be performed only by members of the bargaining unit covered by this Agreement, and (b) the Employer shall at all times hold and exercise full control of the terms and conditions of employment of all such employees pursuant to the terms of this Agreement.  The provision [sic] of this Article apply to all operations on the Employer's premises covered by this Agreement, regardless of location or displacement of employees or prior use of the area occupied by such operations.

24. Pursuant to the terms of the CBA, contributions are owed to the Plaintiffs by Circus for all hours of covered labor performed on and within the Hotel premises regardless of location and regardless of whose payroll the employee is under. Circus may not use a lease to avoid the obligations imposed by the CBA. By executing the CBA, Circus agreed to pay contributions for all employees performing covered labor at their facility, even if those employees perform work for or receive their paycheck from another entity.

25. At all times material herein, Circus has been obligated by the terms of the CBA and Trust Agreements to submit written reports to the Plaintiffs on a timely basis showing the identities of employees performing work covered by the CBA and the number of hours worked by or paid to these employees. Further, Circus promised that it would properly pay to the Plaintiffs fringe benefit contributions, dues and/or withholdings on a monthly basis and at specified rates for each hour worked by or paid to the employees for covered labor performed by the CBA.

26. At all times material herein, Circus was obligated to submit said monthly reports and pay said contributions to the Plaintiffs at their administrative offices on or before the fifteenth (15th) day of the month following the month in which the covered labor was performed.

27. As a result of the report and contribution obligations imposed therein, the Plaintiffs are intended beneficiaries of the CBA.

28. The CBA also provides that the Plaintiffs may undertake reasonable inquiry, including audit, of an employer's records insofar as may be necessary or appropriate to verify an employer's compliance with its obligations to the Plaintiffs under the CBA.

29. On or around June 10, 2010, an entity by the name of Flair Management, Inc. dba Rock & Rita's ("Flair") signed that certain Memorandum of Agreement for Food Service Classifications for Flair Management, Inc. dba Rock & Rita's ("MOA") with the Union and Circus to operate a restaurant and/or bar apparently under a sublease ("Sublease") with Circus.

30. By signing the MOA, Flair agreed to be bound by the terms of the CBA.

31. By signing the MOA, Circus agreed that it would, "at all times hold and exercise full control over the terms and conditions of employment of all of the employees, as required by Section 29.01(b) of the [CBA]."

32. Based on information and belief, Flair subsequently assigned its interest under the MOA and Sublease to Tatuado Hospitality Management Group, LLC ("Tatuado"), as successor-in-interest, which has been operating a restaurant and/or bar collectively referred to herein as "Tatuado Restaurant" at the Hotel since that time.

33. At all times material herein, Circus was obligated by the terms of the CBA and Trust Agreements to submit written reports to the Plaintiffs on a timely basis showing the identities of culinary and bartender employees performing work covered by the terms of the CBA and Trust Agreements on the Hotel premises, including those employees employed at the Tatuado Restaurant, and the number of hours worked by or paid to these employees.

34. Further, Circus was obligated to pay fringe benefit contributions to the Plaintiffs on a monthly basis and at specified rates for each hour of worked by or paid to the employees performing covered work on the Hotel premises, including those employed at the Tatuado Restaurant.

35. At all times material herein, Circus was obligated to submit said monthly reports and pay said contributions to the Plaintiffs at their administrative offices on or before the fifteenth (15th) day of each month following the work month in which hours of work covered by the CBA and/or the Trust Agreements were performed.

36. Covered labor, as defined in the CBA, has been performed at the Tatuado Restaurant on the Hotel premises continuously since Tatuado assumed the Sublease and MOA.

37. Based on information and belief, Circus failed to submit payment of all contributions owed to the Plaintiffs and are delinquent to the Plaintiffs for all covered labor performed at the Tatuado Restaurant.

38. The CBA and Trust Agreements provide that upon failure to pay contributions in a timely manner, liquidated damages, interest, attorney's fees and costs will be assessed and become due and owing to the Plaintiffs.

39. Based on the information and documents provided by Tatuado to the Plaintiffs, the total known delinquency due and owing the Plaintiffs by Circus is $213,343.40, comprising unpaid employee benefit contributions, interest, liquidated damages, attorney's fees and costs ("Delinquency"). The Delinquency amount is subject to Plaintiffs' audit of the records of Circus and Tatuado.

40. Under the terms of the CBA and Trust Agreements, Circus is obligated to the Plaintiffs for the Delinquency.

41. Pursuant to the CBA and Trust Agreements, the employees who have performed covered labor at the Tatuado Restaurant my lose eligibility for health benefits as a result of the Defendants' nonpayment of contributions because eligibility is contingent on an employer making the monthly contributions required by the CBA. If an employer is required to make contributions but is delinquent, eligibility may be suspended until the employer makes the required contributions.

42. Circus has the obligation under the CBA and applicable law to keep and maintain payroll, wage, and other relevant records for work performed by its employees working at the Hotel premises, including at the Tatuado Restaurant.

43. The Plaintiffs have the right under the CBA, ERISA and applicable law to conduct a payroll compliance audit of Circus to evaluate and determine the work performed at the Tatuado Restaurant and any resulting obligations due to the Plaintiffs.

44. Plaintiffs are entitled to receive payments from Circus for all covered labor performed by employees performing covered labor at the Hotel, measured by the hours worked

-8-

by such employees and the contributions that should have been paid had Circus abided by the terms of the CBA and Trust Agreements.

45. Circus failed to submit complete and accurate reports or any contributions to the Plaintiffs.

46. The Plaintiffs are entitled to audit the payroll and related records of Circus to determine the amounts owed by Circus and discover any other delinquencies that may be owed to the Plaintiffs. The Plaintiffs are entitled to recover fees and costs of the audit pursuant to the express terms of the CBA and Trust Agreements.

47. On or around November 29, 2017, Circus executed a Corporate Guaranty ("Guaranty") whereby Circus guaranteed to the Plaintiffs full and punctual performance and discharge of all obligations of Tatuado under the MOA and CBA, which obligations included, but were not limited to the punctual remittance of contribution payments and payroll reports when due, pursuant to the terms of the MOA and CBA.

48. Tatuado has failed to fully and punctually perform and discharge all of its obligations to the Plaintiffs under the MOA and CBA. As a result Circus owes the Plaintiffs the Delinquency.

49. The Guaranty also requires that Circus pay all of the Plaintiffs' costs and expenses incurred in connection with the enforcement of the Guaranty, including, but not limited to, Plaintiffs' attorney's fees, legal expenses and court costs whether or not there is a lawsuit or bankruptcy proceeding, appeals and any anticipated post-judgment collection efforts.

50. The Plaintiffs have incurred costs and expenses in connection with the enforcement of the Guaranty.

51. Each of the Defendants are in some manner responsible for the actions, acts and omissions herein alleged and the damages caused to the Plaintiffs, and are therefore jointly and severally liable for the damages set forth herein.

**FIRST CAUSE OF ACTION**
[Breach of Written Labor Agreement, Related Trust Agreements and Corporate Guaranty]

-9-

52. The Plaintiffs herein restate and reallege the above allegations.

53. By the terms of the CBA and Trust Agreements, Circus was required to remit reports and fringe benefit contributions, benefits, dues and/or withholdings to the Plaintiffs for each hour of covered labor performed by their employees.

54. Circus is contractually delinquent by failing to remit reports and pay fringe benefit contributions, benefits, dues and/or withholdings and/or other contract damages to the Plaintiffs when due.

55. Circus breached the CBA and Trust Agreements by failing to timely and properly submit reports and/or fringe benefit contributions, benefits, dues and/or withholdings to the Plaintiffs and/or by failing to pay contract damages as described herein.

56. Pursuant to the CBA and Trust Agreements, Circus agreed that in the event of any delinquency, Circus would pay, in addition to the delinquent fringe benefit contributions, benefits, dues and/or withholdings: (i) interest thereon at the rates established under the CBA, Trust Agreements, or at the legal rate, whichever is greater; (ii) liquidated damages thereon in an amount set by the CBA, Trust Agreements, or as otherwise provided or by law; and (iii) all legal and auditing costs in connection therewith, whether incurred before or after litigation is commenced.

57. It has been necessary for the Plaintiffs to retain legal counsel to enforce their rights under the CBA, Trust Agreements and Guaranty and collect any and all amounts due.

58. Pursuant to the CBA and Trust Agreements, Circus owes the Plaintiffs fringe benefit contributions, benefits, dues and/or withholdings calculated or measured by all hours of covered labor performed by their employees, plus interest at the contractual rate or legal rate, whichever is greater, on all unpaid contributions from the dates the sums were originally due to the Plaintiffs to the date of judgment, liquidated damages, reasonable attorney's fees, court costs, and auditing costs incurred by the Plaintiffs as a result of the breaches described herein.

59. Under 29 U.S.C. § 1132(g)(2), the Plaintiffs are entitled to collect double the interest in lieu of the liquidated damages total if higher.

-10-

60. The MGM Defendants are responsible for the actions, acts and omissions herein alleged and the damages caused to the Plaintiffs, and are therefore jointly and severally liable for the damages set forth herein.

61. Upon entry of judgment, the Plaintiffs are entitled to post-judgment interest at the highest rate allowed by law. The amount of such interest will be established by proof at trial.

## SECOND CAUSE OF ACTION
[Violation of ERISA]

62. The Plaintiffs herein restate and reallege the above allegations.

63. By failing to report and pay contributions to the Plaintiffs in accordance with the CBA and Trust Agreements, Circus has violated Section 515 of ERISA [29 U.S.C. § 1145]. In accordance with the terms of the CBA and Trust Agreements, and pursuant to Sections 502(g)(2) and 515 of ERISA [29 U.S.C. §§1132(g)(2) and 1145], the Plaintiffs are entitled to payment of all contributions determined to be due, as well as liquidated damages, interest, attorney's fees, costs incurred in enforcing the terms of the Trust Agreements, and such other legal and equitable relief as the Court deems appropriate.

64. The contract breaches and violations of ERISA identified above harm the Plaintiffs and place at risk the Plaintiffs' ability to provide required employee benefits to their beneficiaries.

65. The Plaintiffs' remedies at law are not sufficient to adequately compensate the Plaintiffs or their beneficiaries from past harm caused by said violations, or to protect them from the harm or threat of harm caused by similar future violations.

66. The Plaintiffs are likely to prevail on the merits of their claims.

67. The Plaintiffs are entitled to injunctive relief pursuant to 29 U.S.C. § 1132(a)(3) and other applicable law affirmatively compelling Circus to make its records available to the Plaintiffs for inspection and audit to verify compliance with its obligations under the CBA and Trust Agreements.

68. The Plaintiffs are entitled to injunctive relief pursuant to 29 U.S.C. § 1132(a)(3) and other applicable law affirmatively compelling Circus to submit all monthly remittance reports and pay all contribution amounts and related damages to the Plaintiffs in compliance with their obligations under the CBA and Trust Agreements.

69. The Plaintiffs are entitled to all remedies provided by ERISA as and for compensation for Circus's violations.

70. The MGM Defendants are responsible for the actions, acts and omissions herein alleged and the damages caused to the Plaintiffs, and are therefore jointly and severally liable for the damages set forth herein.

### THIRD CAUSE OF ACTION
[Breach of Corporate Guaranty]

71. The Plaintiffs herein restate and reallege the above allegations.

72. By signed the Guaranty, Circus guaranteed to the Plaintiffs full and punctual performance and discharge of all obligations of Tatuado under the MOA and CBA, which obligations included, but were not limited to the punctual remittance of contribution payments and payroll reports when due, pursuant to the terms of the MOA and CBA.

73. Tatuado has failed to fully and punctually perform and discharge its obligations to the Plaintiffs under the MOA and CBA. As a result Circus owes the Plaintiffs the Delinquency.

74. Circus breached the Guaranty by failing to pay the Delinquency and any other amounts that may be owed to the Plaintiffs as a result of Tatuado's failure to timely submit reports and payment of contributions to the Plaintiffs.

75. The Guaranty also requires that Circus pay all of the Plaintiffs' costs and expenses incurred in connection with the enforcement of the Guaranty, including, but not limited to, Plaintiffs' attorney's fees, legal expenses and court costs whether or not there is a lawsuit or bankruptcy proceeding, appeals and any anticipated post-judgment collection efforts.

76. It has been necessary for the Plaintiffs to retain legal counsel to enforce their

-12-

rights under the CBA, Trust Agreements and Guaranty and collect any and all amounts due.

77. Pursuant to the Guaranty, Circus owes the Plaintiffs fringe benefit contributions, benefits, dues and/or withholdings calculated or measured by all hours of covered labor performed by their employees, plus interest at the contractual rate or legal rate, whichever is greater, on all unpaid contributions from the dates the sums were originally due to the Plaintiffs to the date of judgment, liquidated damages, reasonable attorney's fees, court costs, and auditing costs incurred by the Plaintiffs as a result of the breaches described herein.

78. The MGM Defendants are responsible for the actions, acts and omissions herein alleged and the damages caused to the Plaintiffs and are therefore jointly and severally liable for the damages set forth herein.

79. Upon entry of judgment, the Plaintiffs are entitled to post-judgment interest at the highest rate allowed by law. The amount of such interest will be established by proof at trial.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs pray for Judgment against Defendants, and each of them, as follows:

1. For the Court's Order compelling Circus to deliver or make available to the Plaintiffs all information and documents necessary to permit the Plaintiffs' auditors to perform payroll compliance audits deemed necessary and proper by the Plaintiffs;

2. For the Court's Order enjoining Circus from failing to fully cooperate with any audits deemed necessary and proper by the Plaintiffs, and from failing to timely pay to the Plaintiffs delinquent amounts discovered by the audits or as otherwise incurred in the normal course of business;

3. For the Court's Order affirmatively compelling Circus to abide by the terms of the CBA, Trust Agreements and Guaranty, including, but not limited to, submitting and fully paying accurate monthly contribution remittance reports and contribution amounts to the Plaintiffs on a timely basis;

-13-

4. For unpaid fringe benefits contributions in amounts to be proven at trial;

5. For damages for breach of contract and violation of ERISA in an amount to be proven at trial;

6. For liquidated damages in amounts to be proven at trial;

7. For accrued interest on all unpaid contributions and damages from their due dates until paid in amounts to be proven at trial;

8. For Plaintiffs' audit costs in an amount to be proven at trial;

9. For Plaintiffs' reasonable attorneys' fees for having to bring this action to compel reporting compliance and contribution recovery with associated damages;

10. For Plaintiffs' costs of suit incurred herein;

11. For such additional relief as may be provided for by 29 U.S.C. § 1132; and

12. For such additional relief as this Court may deem just and proper.

DATED this 20th day of December, 2019.

CHRISTENSEN JAMES & MARTIN, CHTD.

By: */s/ Kevin B. Archibald*
Kevin B. Archibald, Esq.
Nevada Bar No. 11871
7440 W. Sahara Avenue
Las Vegas, Nevada 89117
Telephone: (702) 255-1718
Email: kba@cjmlv.com
*Attorneys for Board of Trustees
of UNITE HERE Health, et al.*

-14-